IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Tony Jackson (M-07462), ) | |
| ) | |
| Jackson, ) | |
| ) | Case No. 20 C 50021 |
| v. ) | |
| ) | Hon. Iain D. Johnston |
| I.D.O.C., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Illinois prisoner Tony Jackson initiated this lawsuit *pro se* under 42 U.S.C. § 1983 after an altercation with his cellmate on April 20, 2019. Jackson alleged that correctional officers at Dixon Correctional Center failed to separate him from his cellmate after Jackson told them that they repeatedly argued about Jackson's frequent toilet use and that Jackson felt unsafe around him. Following screening under 28 U.S.C. § 1915A, the Court allowed Jackson to proceed with a failure-to-protect claim against Officer Barron, Lt. Segretto, and Lt. Stevens ("Defendants"). For the reasons discussed below, the Court grants the Defendants' motion for summary judgment (Dkt. 143).

**I.     Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported

by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Defendants filed a motion for summary judgment (Dkt. 143, DMOT) a statement of facts (Dkt. 144, DSOF), and a supporting memorandum, (Dkt. 145, DMEM). Each substantive assertion of fact is supported by citations to evidentiary material. Because Jackson is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 146.) Jackson responded by filing essentially a memorandum, which exhibited some of the parties' written discovery, that is not fully compliant with LR 56.1. (Dkt. 156, PMEM) (The response is incorrectly captioned as a motion, and the Court previously terminated it as such.) During a pre-filing conference, the Court explained in detail to Jackson the requirements to respond to a motion for summary judgment, including the requirements under Local Rule 56.1. Dkt. 136.

Because Jackson has not properly responded to Defendants' factual statements, the Court will accept them as true to the extent supported by the record. *Lamz*, 321 F.3d at 683. But

2

notably, the evidence that Defendants submitted in support of summary judgment consists of entirely Jackson's own deposition testimony and own written discovery responses. (*See* DSOF.)

Moreover, and although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the facts identified by Jackson in his response filing to the extent they are supported by the record or he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently).

The Court also is mindful that failure to strictly comply with Local Rule 56.1, or indeed to respond at all to a motion for summary judgment, does not automatically warrant judgment in favor of the moving party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (moving party has "ultimate burden of persuasion" to show entitlement to judgment as a matter of law). The Court will apply these standards in evaluating the evidence.

**II.     Factual Background**

This lawsuit concerns events at Dixon in April 2019 while Jackson and inmate Stephen McCoy were cellmates. Jackson was an inmate incarcerated at Dixon during the relevant time period. (DSOF ¶ 1.) In 2017 or 2018 Jackson learned that he may have ulcerative colitis, which has caused him to use the toilet frequently throughout the day. (*Id.*, ¶ 2.) In April 2019 Jackson's cellmate was inmate Stephen McCoy. (*Id.*, ¶ 3.) Defendant Christine Barron is a correctional officer at Dixon, and Defendants Daniel Segretto and Renee Stevens are correctional lieutenants at Dixon. (*Id.*, ¶¶ 4-6.)

On or about April 14, 2019, while near "med-line", Jackson told Officer Barron that he had a "serious argument" with his cellmate concerning his ulcerative colitis, and that he was

3

concerned for his safety. (*Id.*, ¶ 8.) He asked to be separated before the situation worsened. (Dkt. 144-4, Plaintiff's Answers to Interrogatories, ("P's Ans. to Rogs.") #14.) Barron told Jackson to fill out a request slip to the assignment/placement officer explaining the situation. (*Id.*) Jackson says he wrote to placement, health care administration, and "all counselors". (*Id.*) Jackson does not have a copy of what he wrote because an officer searched his cell (at a time not specified) and took it, along with other legal papers, when Jackson was at UIC Hospital. (*Id.* #15.)

Jackson had not been moved, so on one occasion sometime between April 15 to 18, 2019, Jackson told Lt. Segretto at chow time in the dining hall that he was having "a problem … with [his] cellie about [his] chronic condition; it's a request that you switch me and can you switch us out.". (DSOF ¶ 10, Dkt. 144-2, Jackson's Answers to Amended Interrogatories ("P's Ans. Am. Rogs"), #18.) When Jackson spoke to Lt. Segretto, Jackson's cellmate and another set of cellmates who were also not getting along were present, and they all submitted request slips to Segretto to interchange cellmates. (PMEM, pg. 13-14.) Jackson testified that his request slip said, "Could you please – Basically could you just basically please move me – separate me and my cellie, we're constantly bumping heads because of my chronical condition and I don't feel safe around him." (DSOF ¶ 11.) Also on one occasion at chow time between April 15 to 18, 2019, Jackson spoke to Lt. Stevens, and according to Jackson, he told Lt. Stevens the same thing he had told Lt. Segretto and handed her the same written request. (DSOF ¶¶ 10-11; Dkt. 144-2, P's Ans. Am. Rogs. #16.) Jackson did not discuss his cellmate with Lts. Segretto or Stevens on any other occasion. (DSOF ¶ 9.) Neither Lieutenant remembers his or her interaction with Jackson or the request slip. (PMEM, pg. 14.)

4

On April 20, 2019, at approximately 8:45 a.m., while Jackson was using the toilet, he and his cellmate McCoy argued about the length and frequency of Jackson's toilet use due to his ulcerative colitis. (DSOF ¶ 12.) Jackson got off the toilet and went to the foyer and told Officer Barron that he wanted to be separated from McCoy. (DSOF ¶ 13; Dkt. 144-4, P's Ans. to Rogs. #12.) Jackson explained to Barron that he had a "serious argument" with McCoy about his chronic condition of ulcerative colitis, that he was afraid of McCoy, and that McCoy had aggressively walked towards him talking about his condition. (DSOF ¶ 14; Dkt. 144-4, P's Ans. to Rogs. #12.)

According to Jackson, Barron nodded her head and looked away. (Dkt. 144-4, P's Ans. to Rogs. #12.) Barron denies this; she says that in response, she asked Jackson if he had put in a request slip with the placement office for a cellmate change and she also told Jackson that he had the option to refuse housing if he was fearful for his safety. (Dkt. 156 at pg. 27 (Defendants' Answers to Plaintiff's First Set of Interrogatories #10).)

Jackson then returned to his cell to get ready for sick call, which he had that morning. (Dkt. 144-4, P's Ans. to Rogs. #12.) As he was in his cell searching for his misplaced I.D. and callpass, McCoy and two other inmates entered and, according to Jackson, attacked him, including with "a very hard weapon". (*Id.*) An altercation ensued until another inmate came to collect Jackson at Officer Barron's behest because he was late for sick call. (*Id.*) Jackson walked to the foyer with a cut above and below his left eyebrow. (*Id.*) Officer Barron sent Jackson to his sick call appointment, where Jackson also received stitches. (*Id.* #12, #19.) Jackson received a disciplinary ticket, was adjudged guilty, and spent time in segregations for "fighting" as a result of the altercation, but he denies that charge. (Dkt. 29, Am. Compl., pg.

5

14-15.)

On September 30, 2020, the Court screened Jackson's amended complaint and permitted him to proceed on a claim of failure to protect against Defendants as well as a John Doe sergeant. (Dkt. 28.) The Court dismissed a claim regarding Jackson's disciplinary proceedings. (*Id.*) Jackson had alleged in his amended complaint that in between notifying Barron and Segretto, he relayed the same concerns about McCoy to a John Doe sergeant. But Jackson did not attempt to identify this sergeant during discovery, never amended his complaint to name him, and does not discuss this sergeant in his summary judgment response. The John Doe Sergeant is therefore dismissed with prejudice. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (explaining that failure to identify unknown defendant during discovery and consequential failure to serve that defendant with process requires dismissal). The named Defendants (Barron, Segretto, and Stevens) now move for summary judgment in their favor. For the reasons explained below, their motion is granted.

## III. Discussion

### A. Summary Judgment Standard

On summary judgment, the Court must view the record in the light most favorable to the non-moving party and grant the motion if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021); Fed. R. Civ. P. 56(a). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element that is essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The parties seeking summary judgment bear the initial burden of showing the grounds for their motion. *Id.* at 323. Once they have done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is genuine when a reasonable jury could return a verdict in favor of the non-moving party. *Id.*

The Court must construe all facts in the light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.*

 B. *Analysis*

The Eight Amendment's proscription against cruel and unusual punishment includes a duty to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). "Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Id.* at 569. Rather, a prison official is liable for failure to protect an inmate "only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837). More specifically, to prevail on a failure-to-protect claim, a prisoner must be able to establish: (1) that he was exposed to an objectively serious risk of harm, and (2) the defendant "had actual knowledge of that risk and

responded with deliberate indifference." *Zirko v. Rabideau*, No. 21-1389, 2022 WL 16955470, at *1 (7th Cir. Nov. 16, 2022).

Defendants do not suggest that a reasonable factfinder would not find that Jackson meets the first requirement for his claim. "[A] beating suffered at the hands of a fellow detainee . . . clearly constitutes serious harm[.]" *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Defendants' motion focuses on the second element: deliberate indifference. They contend that they did not possess knowledge of a serious risk to Jackson, and therefore that they could not have been deliberately indifferent to that which they were unaware. (DMEM, pg. 4-6.) The Court agrees.

To establish deliberate indifference to an excessive risk of harm, Jackson was required to identify evidence showing that each defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837). A prisoner's communication to a prison official of "generalized, vague or stale" fears of harm does not impart the requisite awareness. *Id.* at 480-81. Instead, a prisoner's reported fear must be specific enough, or there must be other corroborating evidence, demonstrating that the fear is plausible and there exists a real, imminent threat of harm. *Zirko*, 2022 WL 16955470, at *2 (citing *Gevas*, 798 F.3d at 840-46).

Here Jackson has not set forth evidence showing that Officer Barron had actual knowledge of a specific threat to Jackson that was plausible and imminent. She therefore could not have acted with deliberate indifference to such a risk. Jackson's two brief and vague statements to Barron did not supply the requisite knowledge. Certainly the record supports that Barron knew

8

Jackson wanted a new cellmate because he and McCoy had been arguing about his toilet use. And Jackson did tell Barron that he was afraid of McCoy. But he did not tell Barron anything to render that fear well-founded from her view. He did not elaborate upon their prior arguments and did not suggest that they had been physical in any manner. He did not describe that McCoy had a history or propensity for violence or was volatile or unstable. And he did not tell Barron that McCoy had uttered any threating statements of violence or of any kind. At most Jackson told Barron that McCoy "walked aggressively towards him". But that statement is woefully unclear and vague and not indicative a of true threat. *See generally Dale*, 548 F.3d at 569 (explaining that inmate's "vague statement that inmates were pressuring him and asking questions were simply inadequate to alert the officer to the fact that there was a true threat at play") (internal quotation marks omitted).

It is *not* sufficient that Jackson identified a would-be assailant and iterated fear. "[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.". *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016). Numerous courts, including the Seventh Circuit, have found that similar knowledge on the part of correctional officials of fearful inmates who were not getting along with their cellmates, did not support a claim of failure to protect following attack by the cellmates where the inmates had not substantiated their fears. *See, e.g., Luttrell v. Nickel*, 129 F.3d 933, 934–36 (7th Cir. 1997) (affirming summary judgment in favor of correctional officer where plaintiff had told her of his cellmate's "mental behavior" and asked for a new cellmate, and she laughed and told plaintiff it would be ok if the cellmate took his medication); *Zirko,* 2022 WL 16955470, at *1 (affirming summary judgment for correctional officer where plaintiff had told him that cellmate had

9

"threatened to beat him within an inch of his life" but did not provide context for that threat); *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021) (affirming summary judgment in favor of correctional officer where plaintiff had two brief conversations with officer in which he told him that he was in "fear for [his] safety" and that his cellmate had "threatened" him); *Bettencourt v. Owens*, 542 F. App'x 730, 732 (11th Cir. 2013) (affirming dismissal of complaint where plaintiff told numerous prison officials that he was being sexually harassed by another inmate but never elaborated upon the nature of the harassment, particularly whether it was physical); *Jones*, 641 F. App'x at 666 (affirming summary judgment in favor of correctional officers where plaintiff told them during rounds that he had flown "kites" seeking protective custody from his cellmate); *O'Connell v. Williams*, 241 F. App'x 55, 58 (3d Cir. 2007) (affirming summary judgment in favor of correctional officer where plaintiff repeatedly requested a new cell because he and his cellmate were not getting along). All of these plaintiffs, like Jackson, identified their potential assailant and expressed concern for their safety, but they did not give the correctional officers sufficient information to believe the cellmates were particularly dangerous.

Similarly here, although a physical altercation between Jackson and McCoy did occur, there is no evidence of record that would have demonstrated to Officer Barron a high likelihood of violence beforehand. Absent such evidence, her failure to take immediate action and instead direct to Jackson to seek a new cellmate through the placement office was a not constitutionally infirm response. In his response memorandum, Jackson contends that Barron's retort that he could refuse housing if the placement office did not separate McCoy demonstrates her subjective awareness that his situation was unsafe. (PMEM, pg. 5.) This argument is not well taken.

10

Barron merely identified Jackson's options; she did not endorse them or suggest they were merited.[1]

For all these reasons, summary judgment is warranted in Officer Barron's favor on Jackson's claim of failure to protect. Jackson's single communication with each Lt. Segretto and Lt. Stevens relayed nearly identical information about the situation with McCoy as did his communication with Barron; indeed, the communications were less detailed and *preceded* the cellmates' argument on the morning of April 20. Therefore, Lts. Segretto and Stevens are entitled to summary judgment for the same reasons as Officer Barron – Jackson has not set forth evidence showing that they had actual knowledge of a specific threat that was plausible and imminent, and therefore they could not have acted with deliberate indifference to such a risk.

The Court addresses one final issue. Jackson asserts in his response memorandum that Officer Barron "intentionally refused" to separate him and McCoy because of a prior "altercation" between himself and Barron. (PMEM, pg. 6.) More specifically, he describes the "altercation", without further elaboration, as: Barron issued him a false disciplinary report on April 12, 2019; he grieved that disciplinary report; a disciplinary hearing on the report was held on April 18, 2019;

---

[1] Jackson also noted in his response that Barron failed to notify him to be ready ten minutes before his morning sick call on April 20th, which was apparently prison protocol, and he states that if she had notified him then he would not have been assaulted or the assault would not have lasted as long. (PMEM, pg. 4.) This is both speculative and beside the point. A failure to adhere to prison protocols for scheduling sick calls does not demonstrate deliberate indifference to Jackson's safety and is insufficient to state a claim for failure to protect under Section 1983. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (explaining that Section 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations). Jackson also states that a "floor officer" did not make rounds that morning, and that if he (the officer) had, he would not have been attacked. (PMEM, pg. 4.) The floor officer does not appear to be one of the defendants to this action, and allegations that an officer left his post, without more, are insufficient to demonstrate deliberate indifference in this context. *See Sandridge v. Allen,* No. 2:15-cv-2176, 2017 WL 6512185, at *6 (C.D. Ill. Aug. 9, 2017) (collecting cases holding that leaving a housing unit unsupervised is insufficient to support a constitutional violation) (citing *Goka v. Bobbitt,* 862 F.2d 646, 651 (7th Cir. 1988) ("When prison officials are unaware of the risk involved and violate a policy which may have prevented injury to an inmate, courts have generally found no constitutional violation.")).

and he then filed another grievance thereafter. (*Id.*) This assertion sounds in a claim of retaliation. To establish retaliation, a prisoner must be able to prove that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future protected activity; and (3) the protected activity was at least a motivating factor in the defendant's decision to retaliate. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

At the end of Jackson's amended complaint, he had alleged that he writes "numerous of grievances constantly on Dixon Corr. Ctr. staff . . . and that's the reason why [Defendants] didn't separate me and my cellmate." (Dkt. 29, pg. 15.) Jackson's lengthy narrative did not elaborate upon this allegation, and he did not attach any grievances that pre-dated the altercation with McCoy to the amended complaint (despite attaching hundreds of pages worth of grievances that followed April 20). Jackson also specified that he sought to bring an Eighth Amendment claim for failure to protect, but he did not likewise specify a retaliation claim. (*Id.*)

Given the paucity of allegations about Plaintiff's prior grievances and his delineation of claims, the Court did not interpret the amended complaint as attempting to raise a retaliation claim. Jackson was permitted to proceed upon only a claim for failure to protect. (Dkt. 28.) To the extent Jackson is attempting to amend his complaint in his response to the motion for summary judgment, in its discretion, the Court denies that motion. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 ("In sum, a district court retains discretion to treat claims presented for the first time in briefing as a constructive motion to amend. It will rarely be appropriate to do so."). Jackson has failed to meet even the less demanding standard under Rule 15, but that rule is inapplicable. In this case, the Court entered a case management order. So, Rule 16's more

demanding diligence standard applies. *Alito v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). And Jackson has failed to show diligence.

In any event, a retaliation claim fails as a matter of law. Jackson's claim fails on the second element: the need to establish a deprivation that would deter future protected conduct. Although a deprivation need not independently violate the Constitution to support a retaliation claim, *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020), the deprivation must be "likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas*, 964 F.3d at 646. "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal," it can be resolved as a matter of law. *Id.* (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Here Jackson contends that Barron knowingly declined to separate him and McCoy. Thus, the "deprivation" for purposes of a retaliation claim is based on the same conduct as Jackson's failure-to-protect claim. This overlap is fatal to his claim.

As discussed above, Jackson did not identify evidence from which it could be inferred that Barron knew McCoy was dangerous in general or knew or should have known that any threat against Jackson was imminent or objectively serious. Her refusal to accommodate Jackson's requests to be separated on the spot cannot therefore be viewed as a sufficient deterrent to protected activity. It was within Barron's discretion to direct Jackson to the placement officer. *See Palay v. United States*, 349 F.3d 418, 429 (7th Cir. 2003) ("prison officials [] have discretion with respect to housing assignments"). It would "trivialize the First Amendment to hold that harassment for exercising the right to free speech was always actionable no matter how unlikely to deter a person

13

of ordinary firmness from that exercise." *Bart,* 677 F.2d at 625; *see, e.g., Douglas*, 964 F.3d at 647 (finding that refusal to return prisoner to preferred cell following segregation was "not enough to launch and sustain a First Amendment claim"); *Burnside v. Mueller*, No. 18-CV-954-RJD, 2020 WL 3871197, at *3 (S.D. Ill. July 9, 2020) (plaintiff failed to present evidence in opposition to summary judgment that his 11-day placement in segregation on investigative status would deter an ordinary person from First Amendment activity); *Heard v. Hardy*, No. 11 C 6683, 2013 WL 3812102 (N.D.Ill. July 22, 2013) (overly-tightened handcuffs, making prisoner stand for hours in shower area and teasing him about his father's passing were not actionable deterring deprivations). Moreover, as Jackson admits, he has and continues to file grievances on a regular basis.

The Court concludes that the lack of a deterring deprivation dooms a retaliation claim. But for the sake of completeness, the Court also finds that Jackson has not set forth evidence showing that Barron's response was motivated by an earlier "altercation" between them about an April 12 disciplinary report. Neither the report nor any ensuing grievances are before the Court because Jackson did not submit them as exhibits. And Jackson's suggestion of a retaliatory motive on Barron's part is sheer speculation. "[M]ere speculation" of retaliation is not enough for a plaintiff to carry his burden at summary judgment. *Wilson v. Rundle*, 774 F. App'x 989, 991 (7th Cir. 2019). Suspicious timing alone is also insufficient to create a triable issue of fact. *See Shanklin v. Freeman*, 799 F. App'x 392, 396 (7th Cir. 2020); *see also Streckenbach v. Meisner*, 768 F. App'x 565, 569–70 (7th Cir. 2019). At a minimum, a plaintiff must "present sufficient evidence" that any defendant knew of the complaints which allegedly prompted the retaliation. *Wheeler v. Radtke*, 694 Fed. Appx. 1023, 1025–26 (7th Cir. 2017). Jackson did not make even

this showing – there is no evidence of record that Barron was aware at the time of her April 14 and April 20 conversations with Jackson that he had grieved her April 12 disciplinary report.

### IV.     Conclusion

The Court grants the Defendants' motion for summary judgment [143]. The Clerk of Court is directed to enter final judgment in favor of the Defendants. The Clerk is also directed to terminate and dismiss John Doe Sergeant because he was never served and dismiss and terminate "I.D.O.C." and "Dixon Corr. Ctr." because they were not listed as defendants in Plaintiff's amended complaint. Plaintiff's "motion to notify" [160] is denied as moot in light of this opinion. Additionally, there is no right of a plaintiff or a procedure to have a lawsuit "heard under the ADA", as the motion requests. To the extent that the motion can be construed as a request for attorney representation, this Court already denied Plaintiff's request for counsel at the summary judgment stage [155] and Jackson provided no compelling reason to revisit that ruling. Case closed. If Jackson wants to appeal, he must file a Notice of Appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998).

Entered:   February 23, 2024            By:      _____
                                                 Iain D. Johnston
                                                 U.S. District Judge